IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: | Chapter 11 |
| AMERICAN SHEETFED, INC. | Case No. 09 B 36916 |
| Debtor. | Honorable Susan P. Sonderby |

**<u>FOURTH AGREED ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL
OF AMERICAN CHARTERED BANK</u>**

This cause coming on to be heard for hearing upon the Debtor's Motion to Amend Interim Order Permitting Debtor to Use Cash Collateral Belonging to American Chartered Bank, due notice having been given to all those entitled thereto, and the Court being fully advised in the premises, American Sheetfed, Inc. ("**Debtor**") and American Chartered Bank ("**Lender**") stipulate as follows:

1. On October 2, 2009, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtor continues to operate its business and manage its affairs as Debtor In Possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. On April 24, 2009, Lender extended credit to the Borrower (the "**Loan**") pursuant to a Promissory Note (the "**Line of Credit Note**") executed and delivered by the Borrower to Lender in the principal sum of Seven Hundred Fifty Thousand Dollars and 00/100 Cents ($750,000.00) payable on Lender's demand, replacing, modifying, restating, and/or extending a Promissory Note dated November 29, 20004.

4. As of October 7, 2009, the Borrower owed Lender the unpaid principal balance of FOUR HUNDRED FORTY SIX THOUSAND AND 00/100 DOLLARS ($446,000.00) plus accrued interest, attorneys' fees and court costs under the Loan.

5. The Loan is secured by a valid and perfected blanket first priority lien and security

interest upon the Debtor's business assets and personal property, including without limitation, accounts receivable (the "**Collateral**"), evidenced by a Commercial Security Agreement executed by the Borrower on April 24, 2009 (the "**Security Agreement**"). Lender perfected its security interest by the filing of UCC-1 Financing Statements in the Office of the Illinois Secretary of State on or about June 1, 1998, and December 20, 1999, continued by a UCC Financing Statement in the office of the Illinois Secretary of State on March 28, 2003, October 2, 2004, February 7, 2008, and September 3, 2009 (collectively the "**UCC Financing Statement**"), and excluding specific equipment subsequently released.

6. The Loan is further evidenced by a Business Loan Agreement (Asset Based) dated April 24, 2009 (the "**Loan Agreement**").

7. The Line of Credit Note, Security Agreement, UCC Financing Statement, Loan Agreement, and all documents executed and delivered by the Debtor to the Lender in connection with the Loan are herein collectively referred to as the "**Loan Documents**".

8. The monies collected by the Debtor in connection with the Collateral and used by the Debtor are subject to the Lender's security interest and rights of Lender and are cash collateral as that term is defined by 11 U.S.C. Section 363(a), subject to the validity of such security interests. The Debtor requires the use of the cash collateral and requests authorization of this Court to utilize the cash collateral pursuant to the provisions of Section 363(c)(2)(B) of the Bankruptcy Code. A statement showing Debtor's anticipated expenses through January 13, 2010 is attached hereto as Exhibit A.

9. The Debtor is unable, pursuant to Section 364 of the Bankruptcy Code, to obtain unsecured credit.

10. In order to prevent a severe disruption in the operation of their business, which would threaten the continuation of the Chapter 11 case and diminish the chances for a successful

2

reorganization to the detriment of the Debtor and the creditors of this estate, the Debtor herewith seeks authority to use the cash collateral in which Lender asserts a pre-petition security interest on an interim basis without prejudice to the Debtor or Lender.

11.    Lender has indicated a willingness to consent to the Debtor's use of cash collateral generated from the Collateral provided that Lender is granted replacement liens, excluding avoidance actions under 11 U.S.C. Sections 510 and 544 through 551, if any, upon the assets in Debtor's possession subsequent to the filing of the Chapter 11 petition to the extent of the collateral diminished, subject to verification of the extent and validity of the liens. In addition, as adequate protection, Debtor proposes to make a monthly adequate protection payment to Lender in the amount of $2,695.00 by December 15, 2009, under the Line of Credit Note, and grant Lender a replacement lien upon the proceeds from assets Debtor acquires subsequent to the filing of the Chapter 11 petition, excluding avoidance actions under 11 U.S.C. Sections 510 and 544 through 551, if any, to the extent that the collateral is utilized subject to verification of the extent and validity of the lien.  The payment to Lender is without prejudice to any parties' right to assert how such payment shall be applied by Lender.

IT IS HEREBY ORDERED THAT:

(a)    The paragraphs contained in the preamble to this Order are incorporated herein by this reference and the Debtor and Lender consent and stipulate to the entry of this Order.

(b)    Debtor is hereby authorized to use Lender's cash collateral on an interim basis pending a final hearing and approval pursuant to Section 363(c) of the Bankruptcy Code provided, however, that (i) cash collateral shall not be used for expenses other than those post-petition obligations on the budget, plus no more than ten percent (10%) of the total proposed expenditures except if otherwise agreed by the Lender, a copy of which is attached hereto as Exhibit "A", and (ii) no payroll payments shall be made without simultaneous tax deposits being

3

made in an amount equal to the applicable withholding and social security taxes for each employee.

(c) Except as otherwise provided in this Order, Debtor shall use the cash collateral solely for payment of its post-petition obligations and indebtedness in the ordinary course of its business operations, unless otherwise ordered by the Court after timely written notice to the Lender.

(d) Debtor shall deposit all monies collected in connection with the Collateral, whether generated pre-petition, or post-petition in its Debtor in Possession account at Lender.

(e) Debtor is hereby ordered and directed to pay Lender a monthly payment in the amount of $2,695.00 by December 15, 2009.

(f) Lender shall have no obligation to disburse monies from the Debtor In Possession account if the effect of any such disbursement would be to create an overdraft in the Debtor In Possession account.

(g) The provisions of this Order, which shall be immediately effective upon entry of this Order, and any actions taken pursuant hereto, shall survive entry of and shall govern with respect to any conflict with any order which may be entered confirming any Plan of Reorganization (including utilization of any cram-down provisions) unless otherwise agreed or which may be entered converting these Proceedings from Chapter 11 to Chapter 7, and the terms and provisions of this Order, as well as the lien and security interest created hereunder and all rights of Lender and obligations of the Debtor created or arising pursuant hereto, shall continue in these proceedings or any superseding proceeding under the Code, and such liens and security interests shall maintain their priority as provided by this Order until satisfied and discharged. If any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this Court, such stay, modification or vacation shall not affect: (i) the validity of any debt to Lender

incurred pursuant to this Order and which is incurred prior to the effective date of such stay, modification or vacation; (ii) the validity and enforceability of any lien or priority authorized hereby with respect to any such debt to Lender; and (iii) the conduct of Lender with respect to the rights granted to Lender in this Order and the Loan Documents prior to the effective date of such stay, modification or vacation. Notwithstanding such stay, modification or vacation, all liabilities owed to Lender by Debtor pursuant to this Order prior to the effective date of such modification, stay or vacation, to or for the benefit of Debtor shall be governed in all respects by the original provisions of this Order and Lender shall be entitled to all of the rights, privileges and benefits, including the security interest in the priority granted herein, with respect to all such liabilities and the course of conduct established in connection therewith.

(h)    The Debtor shall provide weekly financial reports to Lender by the Monday following the end of each weekly period commencing with the week ending December 4, 2009, and monthly financial reports within seven (7) days after the end of each such monthly period commencing with the monthly period ending November 30, 2009, which reports shall include the following: all income, expenses and disbursements; a comparative analysis with the Budget attached hereto as Exhibit A in the format acceptable to the Lender; and any other financial information which may be reasonably requested by Lender or its representative; and other reporting requirements necessary to implement the terms of this Order, including copies of all Court reports filed.

(i)    Intentionally deleted.

(j)    Debtor is hereby ordered and directed to insure the Collateral against risk of loss, damage and destruction for the full replacement value thereof with an insurance company acceptable to Lender and with loss payable to Lender and provide evidence of same to Lender.

(k)    Lender shall have the right to inspect the premises, property, assets and collateral

5

of the Debtor, and conduct audits and inspections of the books and records of the Debtor during regular business hours upon reasonable advance notice.

(l) The provisions of this Order shall be binding upon and inure to the benefit of Lender, and Debtor, retroactive as of the date of the initiation of these proceedings.

(m) This Order is without prejudice to the rights of Lender to receive any pre-petition or post-petition payments due Lender or to seek modification of the terms hereof at any time upon reasonable notice to all parties in interest, and subject to the rights of any party to object thereto.

(n) The Debtor and Lender agree that this Agreed Order shall in no way prejudice any party's rights, including, but not limited to the rights of the Lender, at any time to seek relief from the automatic stay on any legal or equitable grounds (including the absence of adequate protection) and, in the event of any default by the Debtor pursuant to this Agreed Order, to seek an order prohibiting the Debtor from using the Collateral or vacating, modifying or terminating this Agreed Order.

(o) The occurrence of any one or more of the following shall constitute an event of default:

(1) this Agreed Order is stayed, reversed, vacated or modified on appeal or shall cease to be in full force and effect;

(2) the material failure by the Debtor to perform any of its obligations under this Agreed Order and failure to cure the default within ten (10) days after receipt of written notice of the default;

(3) the conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code;

(4) the appointment of a Chapter 11 Trustee; or

(5) the dismissal of the Debtor's bankruptcy case.

(p) Upon Lender's claim that the Debtor has failed to perform in accordance with the terms of this Order, the Debtor's right to use of Cash Collateral pursuant to this Agreed Order shall immediately terminate if Debtor fails to cure after written notice to the Debtor and its counsel pursuant to paragraph (o)(2) of this Order, and Lender may petition the Bankruptcy Court for relief from the automatic stay to exercise any and all rights and remedies it may have with respect to the Collateral or for other appropriate relief.

(q) Debtor's authorization for the use of Cash Collateral pursuant to this Agreed Order shall terminate on the earlier of (a) the entry of a Court order vacating this Agreed Order; or (b) the Effective Date under the Plan of Reorganization to be proposed by the Debtor and confirmed by final order of the Bankruptcy Court; (c) the occurrence of an event of default herein; (d) the conversion of this case to one under Chapter 7; (e) such later date as Lender or the Debtor may hereafter specify in writing; or (f) February 3, 2010.

(r) Nothing in this Order shall in any way restrict the scope or priority of Lender's pre-petition liens, security interests or claims.

(s) A final hearing is set for February 2, 2010, at 10:30 a.m.

Date: JAN 2 6 2010

ENTER: _____
Bankruptcy Judge

QUERREY & HARROW, LTD.
Attorneys for Debtor
175 West Jackson Boulevard, Suite 1600
Chicago, Illinois 60604
312-540-7000

American Sheetfed, Inc.
Case No. 09 B 36916

| | BUDGET WEEK 1 1/18/2010 | BUDGET WEEK 2 1/25/2010 | BUDGET WEEK 3 2/1/2010 | BUDGET WEEK 4 2/8/2010 | BUDGET WEEK 5 2/15/2010 | BUDGET WEEK 6 2/22/2010 | BUDGET WEEK 7 3/1/2010 | BUDGET WEEK 8 3/8/2010 | BUDGET WEEK 9 3/15/2010 | BUDGET WEEK 10 3/22/2010 | BUDGET WEEK 11 3/29/2010 | BUDGET WEEK 12 4/5/2010 | BUDGET WEEK 13 4/12/2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BEGINNING CASH BALANCE | ENDING CASH | | | | | | | | | | | | |
| **CASH RECEIPTS** | | | | | | | | | | | | | |
| A/R Collections | 95,550.00 | 96,100.00 | 93,700.00 | 89,800.00 | 101,200.00 | 93,200.00 | 90,750.00 | 95,550.00 | 96,100.00 | 93,700.00 | 89,800.00 | 101,200.00 | 93,200.00 |
| Interest Income | 4,000.00 | | | | 4,000.00 | | | 4,000.00 | | | | 4,000.00 | |
| Recycling Income | | 1,000.00 | | | | 1,000.00 | | | 1,000.00 | | | | 1,000.00 |
| COBRA insurance | | 100.00 | | 275.00 | | 100.00 | 275.00 | | 100.00 | | 275.00 | | 100.00 |
| TOTAL CASH RECEIPTS | 99,550.00 | 97,200.00 | 93,700.00 | 90,075.00 | 105,200.00 | 94,300.00 | 91,025.00 | 99,550.00 | 97,200.00 | 93,700.00 | 90,075.00 | 105,200.00 | 94,300.00 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | |
| Advertising | | | 250.00 | | | | | | | 250.00 | | | |
| Auto and Transportation | | | 1,250.00 | | | | | | | 1,250.00 | | | |
| Computer Expense | | | 1,050.00 | | | | | | | 1,050.00 | | | |
| Entertainment | | | | | | | | | | | | | |
| Freight | 1,900.00 | 1,750.00 | 1,600.00 | 1,600.00 | 2,200.00 | 1,800.00 | 1,850.00 | 1,900.00 | 1,750.00 | 1,600.00 | 1,600.00 | 2,200.00 | 1,800.00 |
| Insurance | | | | | | | | | | | | | |
| General | | 6,200.00 | | | | 6,200.00 | | | 6,200.00 | | | | 6,200.00 |
| Health | | | 12,410.00 | | | | | | | 12,410.00 | | | |
| Life | | | 1,525.00 | | | | | | | 1,525.00 | | | |
| Interest Expense | 4,780.00 | 4,780.00 | 4,780.00 | 4,780.00 | 4,780.00 | 4,780.00 | 4,780.00 | 4,780.00 | 4,780.00 | 4,780.00 | 4,780.00 | 4,780.00 | 4,780.00 |
| Leases | | | | | | | | | | | | | |
| Equipment | | | | 20,515.00 | | | 20,515.00 | | | | 20,515.00 | | |
| Premises | | | 21,125.00 | | | | | | | 21,125.00 | | | |
| American Chartered Bank | | 2,695.00 | | | | 2,695.00 | | | | | 2,695.00 | | |
| Supplies | | | | | | | | | | | | | |
| Bindery | 500.00 | 450.00 | 450.00 | 450.00 | 750.00 | 550.00 | 450.00 | 500.00 | 450.00 | 450.00 | 450.00 | 750.00 | 550.00 |
| Office | | 800.00 | | | | 800.00 | | | 800.00 | | | | 800.00 |
| Packaging | 1,150.00 | 1,250.00 | 1,500.00 | 1,250.00 | 1,250.00 | 1,125.00 | 1,150.00 | 1,150.00 | 1,250.00 | 1,500.00 | 1,250.00 | 1,250.00 | 1,125.00 |
| Printing | 25,200.00 | 24,000.00 | 23,000.00 | 22,750.00 | 28,450.00 | 23,550.00 | 23,500.00 | 25,200.00 | 24,000.00 | 23,000.00 | 22,750.00 | 28,450.00 | 23,550.00 |
| Warehouse | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 |
| Payroll Expense | | | 100.00 | 100.00 | | | | | | 100.00 | 100.00 | | |
| Postage | | | | | | | 100.00 | | | | | | |
| Repairs and Maintenance | | | | 770.00 | | | 770.00 | | | | 770.00 | | |
| Utilities | 3,525.00 | | | | 3,525.00 | | | 3,525.00 | | | | 3,525.00 | |
| Wages | | | | | | | | | | | | | |
| Commissions | | 3,450.00 | | | | 3,450.00 | | | 3,450.00 | | | | 3,450.00 |
| Officer | 9,100.00 | 9,100.00 | 9,100.00 | 9,100.00 | 9,100.00 | 9,100.00 | 9,100.00 | 9,100.00 | 9,100.00 | 9,100.00 | 9,100.00 | 9,100.00 | 9,100.00 |
| Other | 23,570.00 | 23,570.00 | 23,570.00 | 23,570.00 | 23,570.00 | 23,570.00 | 23,570.00 | 23,570.00 | 23,570.00 | 23,570.00 | 23,570.00 | 23,570.00 | 23,570.00 |
| Temporary Labor | 2,650.00 | 6,650.00 | 6,650.00 | 6,650.00 | 6,650.00 | 6,650.00 | 2,650.00 | 2,650.00 | 6,650.00 | 6,650.00 | 6,650.00 | 6,650.00 | 6,650.00 |
| TOTAL CASH DISBURSEMENTS | 76,375.00 | 88,695.00 | 112,360.00 | 95,535.00 | 84,275.00 | 88,270.00 | 92,435.00 | 76,375.00 | 86,000.00 | 112,360.00 | 98,230.00 | 84,275.00 | 85,575.00 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL CASH RECEIPTS | 95,550.00 | 97,200.00 | 93,700.00 | 90,075.00 | 105,200.00 | 94,300.00 | 91,025.00 | 95,550.00 | 97,200.00 | 93,700.00 | 90,075.00 | 105,200.00 | 94,300.00 |
| TOTAL CASH DISBURSEMENTS | 76,375.00 | 88,695.00 | 112,360.00 | 95,535.00 | 84,275.00 | 88,270.00 | 92,435.00 | 76,375.00 | 86,000.00 | 112,360.00 | 98,230.00 | 84,275.00 | 85,575.00 |
| NET COLLECTIONS EXCESS | 19,175.00 | 8,505.00 | -18,660.00 | -5,460.00 | 20,925.00 | 6,030.00 | -1,410.00 | 19,175.00 | 11,200.00 | -18,660.00 | -8,155.00 | 20,925.00 | 8,725.00 |
| LINE AVAILABILITY | | | | | | | | | | | | | |
| CASH EXCESS | 19,175.00 | 28,180.00 | 10,020.00 | 5,060.00 | 26,485.00 | 33,015.00 | 32,105.00 | 51,780.00 | 63,480.00 | 45,320.00 | 37,665.00 | 59,090.00 | 68,315.00 |
| CASH ON HAND | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| ENDING CASH | 19,675.00 | 28,680.00 | 10,520.00 | 5,560.00 | 26,985.00 | 33,515.00 | 32,605.00 | 52,280.00 | 63,980.00 | 45,820.00 | 38,165.00 | 59,590.00 | 68,815.00 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ACCOUNTS RECEIVABLE | | | | | | | | | | | | | |
| BEGINNING BALANCE | 656,744.22 | 647,194.22 | 646,094.22 | 647,994.22 | 646,194.22 | 642,994.22 | 644,494.22 | 633,744.22 | 624,194.22 | 623,094.22 | 624,994.22 | 623,194.22 | 619,994.22 |
| ADD: SALES | 86,000.00 | 95,000.00 | 95,600.00 | 88,000.00 | 98,000.00 | 94,700.00 | 80,000.00 | 86,000.00 | 95,000.00 | 95,600.00 | 88,000.00 | 98,000.00 | 94,700.00 |
| LESS: COLLECTIONS | 95,550.00 | 96,100.00 | 93,700.00 | 89,800.00 | 101,200.00 | 93,200.00 | 90,750.00 | 95,550.00 | 96,100.00 | 93,700.00 | 89,800.00 | 101,200.00 | 93,200.00 |
| ENDING BALANCE | 647,194.22 | 646,094.22 | 647,994.22 | 646,194.22 | 642,994.22 | 644,494.22 | 633,744.22 | 624,194.22 | 623,094.22 | 624,994.22 | 623,194.22 | 619,994.22 | 621,494.22 |